UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MCMG CAPITAL ADVISORS, INC. | CIVIL ACTION NO. 6: 17-cv-00614 |
| VERSUS | MAGISTRATE JUDGE HANNA |
| FOOD-N-FUN, INC., ET AL | BY CONSENT OF THE PARTIES |

**MEMORANDUM RULING**

Currently pending is the plaintiff's motion for partial summary judgment. [Rec. Doc. 42]. The motion is opposed and oral argument was held on January 25, 2018. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the plaintiff's motion for partial summary judgment is denied.

**BACKGROUND**

On February 12, 2016, the plaintiff, MCMG Capital Advisors, Inc. ("MCMG") entered into a Merger & Acquisition Financial Services Agreement ("Agreement") with Food-N-Fun, Inc. ("Food-N-Fun") and Todd Street.[1] In the Agreement, MCMG agreed to provide certain financial consulting as well as merger and acquisition advisory services for the sale of the equity and assets of Food-N-Fun. The agreement

---

[1] In the Agreement, MCMG is referred to as Matrix, Food-N-Fun is referred to as Company, and Todd Street is referred to as Seller.

1

established that MCMG was required to market Food-N-Fun to Retif Oil & Fuel, LLC ("Retif Oil") before any other potential buyers unless the potential buyers were approved in advance by Todd Street. In exchange for these services, MCMG would be compensated with a transaction fee if a closing occurred during the term of the Agreement or if a closing occurred within fifteen months of the termination of the Agreement and the buyer was identified or had contact with MCMG, Food-N-Fun, or Todd Street during the term of the Agreement. MCMG alleges that Food-N-Fun breached the Agreement when a closing occurred after the term of the Agreement expired and MCMG was not compensated with a transaction fee.

The list of services MCMG agreed to provide are established in Section 2 of the Agreement, which include: (1) build and maintain a data room; (2) provide valuation guidance to the Company and Seller; (3) prepare marketing materials for the Company; (4) identify potential Buyers; (5) run a sale marketing process and solicit offers from potential Buyers; (6) interface, communicate and assist in the negotiations with potential Buyers; (7) provide Company and Seller with frequent status reports delineating the progress of conversations with potential Buyers; (8) work with Company and its legal advisors to close the Transaction(s).

In furtherance of these services, MCMG began to prepare a Confidential Information System ("CIM") to use as a marketing tool. MCMG employees, Andrew

Lopresti and John Underwood, worked with Warren Guidry, the president of Food-N-Fun, to gather financial information to prepare the CIM and an electronic data room. On March 17, 2016, the CIM was reviewed and approved by Warren Guidry on behalf of Todd Street.[2]

The CIM contained confidential information regarding Food-N-Fun's operations, assets, and financial history. MCMG prepared the CIM by using asset-level earnings before interest, taxes, depreciation and amortization (known as EBITDA), and to remove from the asset-level EBITDA any non-recurring income or expenses so that a purchaser can accurately see the anticipated income for each store.[3] The CIM also contained an employee retention requirement that stated, "it is the strong preference of Todd Street that the sale of the Food-N-Fun includes the retention of all employees, including the corporate staff, for a period of at least two years post-closing."[4] It is undisputed that Todd Street preferred a local buyer for Food-N-Fun because a local buyer would be more likely to retain Food-N-Fun's employees. However, Todd Street's preference that MCMG only market Food-N-Fun to potential buyers that would retain Food-N-Fun's employees is not contained in the

---

[2] Rec. Doc. 42-19.

[3] Rec. Doc. 42-9, p. 2.

[4] Rec. Doc. 42-11, p. 20, Section 4.1.

Agreement.

MCMG used the CIM to market Food-N-Fun to Retif Oil and Gaubert Oil. As a result, Retif Oil signed a letter of intent to purchase Food-N-Fun for twenty million dollars. However, after a meeting between Todd Street and Ryan Retif, vice president of Retif Oil, the sale did not occur. Todd Street testified that he was offended by Retif Oil's offer because he believed Food-N-Fun was worth more than the offer.[5] At the time, it was believed that Food-N-Fun's value was twenty-five million dollars based on MCMG's representation.[6]

When the sale to Retif did not occur, Todd Street had a meeting with MCMG representatives to discuss whether to expand the marketing of Food-N-Fun to potential national buyers.[7] At the meeting, Todd Street testified that MCMG advised him that one of the consequences of going to a national process was that it was unlikely that Food-N-Fun's employees would be retained.[8] With this knowledge, Todd Street agreed that MCMG could expand their marketing of Food-N-Fun to potential national buyers. As a result, a new CIM was created to market Food-N-Fun

---

[5] Rec. Doc. 55-10, p.14.

[6] Rec. Doc. 55-7, pp. 12 and 32.

[7] Rec. Doc. 55-10, p. 15.

[8] Rec. Doc. 55-10, p.16.

nationally. The national CIM did not contain the employee retention requirement.[9]

MCMG received offers from potential national buyers, including Travelers Centers of America, LLC ("Travel Centers"), but a closing did not occur. Todd Street began discussions with Retif Oil about purchasing Food-N-Fun after several unrelated meetings with their representatives. Todd Street and Warren Guidry testified that MCMG was not part of the negotiations with Retif Oil and that they provided Retif Oil with their own financial information and did not use the CIM.

It is undisputed that the Agreement expired by its own terms on or about November 11, 2016 and Food-N-Fun was sold to Retif Oil, a buyer that the parties to the Agreement had contact with during the terms of the Agreement, on or about March 17, 2017. As a result, MCMG filed a complaint against Food-N-Fun and Todd Street for breach of contract, recovery of contractual attorney's fees, and to revoke the transfer of the proceeds of the sale of Food-N-Fun's assets to Todd Street. In response, the defendants filed an answer that asserted affirmative defenses based on failure to state a claim upon which relief can be granted and MCMG's alleged breach of fiduciary duties and obligations under the Agreement.

In the present motion for partial summary judgment, MCMG contends that Food-N-Fun's affirmative defenses do not establish a defense to MCMG's breach of

---

[9] Rec. Doc. 42-12.

contract claim.

## ANALYSIS

### A. The Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[10] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[11]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[12] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[13] All facts and inferences are

---

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[11] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[12] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[13] *Washburn v. Harvey*, 504 F.3d at 508.

construed in the light most favorable to the nonmoving party.[14]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[15] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[16]

When both parties have submitted evidence of contradictory facts, a court is bound to draw all reasonable inferences in favor of the nonmoving party.[17] The court cannot make credibility determinations or weigh the evidence, and the nonmovant cannot meet his burden with unsubstantiated assertions, conclusory allegations, or a scintilla of evidence.[18] "When all of the summary judgment evidence presented by both parties could not lead a rational trier of fact to find for the nonmoving party,

---

[14] *Brumfield v. Hollins*, 551 F.3d at 326, citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[15] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[16] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[17] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).

[18] *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d at 540.

there is no genuine issue for trial and summary judgment is proper."[19]

**B. MCMG'S Objections**

MCMG's contends in their reply memorandum that portions of Food-N-Fun's opposition should be stricken. This Court will construe MCMG's argument as an objection based on Fed.R.Civ.P.56(c). When material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, a party may object to the materials offered.[20] Specifically, MCMG objects to: (1) portions of Food-N-Fun's opposition on pages 1-2, and 6 that contains alleged facts that are unsupported by evidence; (2) the affidavit of Warren Guidry because it contains hearsay; and (3) and the hand-written notes that are attached to the opposition because the notes were not produced in discovery and do not have sufficient evidentiary foundation to be admissible.

**1. Warren Guidry's Affidavit**

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that affiant or declarant is competent to testify on the matters stated."[21] MCMG

---

[19] *Greene v. Syngenta Crop Protection, Inc.*, 207 F.Supp.2d 537, 542 (M.D. La. 2002), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[20] Fed. R. Civ. P. 56(c)(2).

[21] Fed. R. Civ. P. 56(c)(4).

8

contends that Warren Guidry's affidavit contains hearsay, but does not specifically identify the portions that they seek to strike. After a review of the affidavit, Warren Guidry's statement regarding what Kent Oil's attorney allegedly indicated is hearsay and there is no applicable exception that can be determined from the record. Accordingly, paragraph 15 of Warren Guidry's affidavit will not be considered as part of the summary judgment evidence.

**2. Handwritten Notes**

MCMG objects to certain documents that are attached as exhibits to Food-N-Fun's opposition and Warren Guidry's affidavit because they contain handwritten notes. There are five pages attached to Warren Guidry's affidavit. The first page consists of an email from John Underwood to Warren Guidry with handwritten notes and the second page is a continuation of the handwritten notes. The same documents are also attached to Food-N-Fun's opposition as an exhibit.[22] In the affidavit, Warren Guidry avers that the email was forwarded to him from John Underwood regarding the retention of Food-N-Fun's employees by a perspective purchaser, Travel Centers of America. Warren Guidry further avers that he received the email and contacted Shawn Cryan with Travel Centers and made contemporaneous notes on the email as he spoke with Mr. Cryan. Therefore, the handwritten notes are admissible and will

---

[22] Rec. Doc. 55-8.

be considered.

The third page attached to the affidavit contains a handwritten statement that is not referenced in the affidavit. However, the Court can identify the handwritten statement because it was referenced and read during Todd Street's deposition.[23] Therefore, the third page that is attached to the affidavit will not be considered because the proper foundation is not laid to attach it to the affidavit. However, Todd Street's statement can be considered because it is identified and read in its entirety by Todd Street in his deposition.

The fourth and fifth page that are attached to the affidavit are identified in the affidavit as a CIM that was prepared by MCMG, but does not identify the source of the handwritten notes that appear on the document. The CIM is also attached to Food-N-Fun's opposition as an exhibit.[24] No information is provided regarding who wrote the notes on the CIM, when the notes were written, or the reasoning for the notes. Therefore, the CIM with the handwritten notes attached to Warren Guidry's affidavit and to Food-N-Fun's opposition is not admissible as submitted and will not be considered.

**3. Unsupported Evidence in Opposition**

---

[23] Rec. Doc. 55-10, p. 45.

[24] Rec. Doc. 55-3.

MCMG contends that many of Food-N-Fun's alleged facts in their opposition on pages 1-2 and 6 are purported statements that are inadmissable hearsay. However, MCMG does not specifically identify the statements to which they are objecting. Pages one and two contain Food-N-Fun's arguments in support of their opposition. Page one contains conclusory allegations, but does not reference specific evidence or any alleged statements. Page two contains an allegation that John Underwood made false and intentionally misleading statements to Food-N-Fun. The Court has determined that the email between Warren Guidry and John Underwood is admissible and as a result this allegation will be considered in the opposition.

Page 6 contains statements regarding Kent Oil that are not supported by admissible evidence. In Warren Guidry's deposition, he testified to statements that MCMG allegedly made to Kent Oil. This statement, like the previous statement regarding Kent Oil's attorney's alleged statement, is inadmissible hearsay and will not be considered.

**C. Breach of Contract**

The Court applies substantive state law in a diversity action.[25] In addition, Section 6.3 provides that the Agreement "shall be construed and enforced under the

---

[25] *Erie v. Railroad Co. v. Tompkins*, 304 U.S. 64 (1983); see *ACS Construction CO., Inc. of Mississippi v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003). ("We look to state law for rules governing contract interpretation.").

laws of the State of Louisiana." Therefore, Louisiana law will be applied.

In order to state a valid claim for breach of contract under Louisiana law, a plaintiff must allege: (1) an undertaking of an obligation to perform, (2) a failure to perform the obligation, and (3) damages resulting from the failure to perform.[26] A failure to perform an obligation "results from nonperformance, defective performance, or delay in performance."[27]

MCMG contends Food-N-Fun breached the contract because MCMG was not paid a transaction fee when Food-N-Fun was sold to Retif Oil. Food-N-Fun contends that they are not obligated to pay the transaction fee because MCMG substantially breached the Agreement by: (1) altering Food-N-Fun's financial information and providing the false information to potential buyers, and (2) failing to properly represent Food-N-Fun's interest and desire to find a purchaser that would retain Food-N-Fun's employees.

In Louisiana, when one party to a contract substantially breaches a contract, the other party has a defense and an excuse for non-performance.[28] Food-N-Fun essentially contends that MCMG breached their fiduciary duties and failed to act in

---

[26] *Sanga v. Perdomo*, 167 So.3d 818. 822 (La. App. 5 Cir. 2014); *Meyer & Associates, Inc. V. Coushatta Tribe of Louisiana*, 185 So.3d 222, 246 (La. App. 3 Cir. 2016).

[27] La. C.C. art. 1994.

[28] *Olympic Ins. Co. v. H.D. Harrison, Inc.,* 463 F.2d 1049, 1053 (5th Cir. 1972).

good faith when performing their required services under the Agreement.

The Agreement does not establish that the parties to the contract have fiduciary duties or a duty to act in good faith such that a breach of the contract is created. Likewise, while Louisiana law provides that good faith shall govern the conduct of parties performing their obligations and that all contracts in Louisiana must be performed in good faith,[29] Louisiana law does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties.[30] Therefore, MCMG's failure to conduct their services in good faith is not sufficient to establish a breach of the Agreement.

Food-N-Fun's arguments that were presented in opposition to MCMG's partial motion for summary judgment are better asserted in their counterclaim based on agency law. Nevertheless, there are genuine issues of material fact regarding whether MCMG substantially breached their duties to perform certain services under the Agreement. Specifically, there are genuine issues of material fact that MCMG substantially breached the Agreement by not providing valuation guidance to Food-N-Fun and not providing Food-N-Fun with frequent status reports delineating the progress of conversations with potential buyers.

---

[29] La. C.C. art. 1759; La. C.C. art. 1983.

[30] *Gulf Coast Bank and Trust Co. v. Warren*, 125 So.3d 1211, 1219 (La. App.4 Cir. 2013).

On behalf of Food-N-Fun, Warren Guidry testified that Food-N-Fun was convinced that the value of the company was twenty-five million dollars.[31] This evidence is corroborated by Todd Street's testimony that his understanding is that MCMG made a take it or leave it proposition to Retif Oil based on a value of twenty-five million dollars.[32] However, there is no evidence that MCMG directly provided valuation guidance to Food-N-Fun and/or Todd Street as required under the Agreement. Furthermore, the evidence establishes that the lack of valuation guidance and the uncertainty regarding the value of Food-N-Fun may have been a substantial factor in the unsuccessful negotiations between Food-N-Fun and Retif Oil.

Todd Street testified that he had a meeting with Retif Oil and turned down their offer based on the value of the company.[33] It is undisputed that MCMG was not at the meeting and not part of the discussions that occurred at the meeting between Food-N-Fun and Retif Oil. The lack of MCMG's presence and the lack of evidence to establish that MCMG provided valuation guidance to Food-N-Fun regarding the value of Food-N-Fun create genuine issues of material fact whether MCMG breached the Agreement by failing to fulfill their obligations.

---

[31] Rec. Doc. 55-7 p. 12.

[32] Rec. Doc. 55-10, p. 37.

[33] Rec. Doc. 55-10, p.14.

There is also a genuine issue of material fact whether MCMG breached the Agreement by failing to provide frequent status reports delineating the progress of conversations with potential buyers. The email between Warren Guidry and John Underwood indicates that John Underwood provided a status report on his discussions with Travel Centers, but there are factual issues regarding whether the report provided an update that delineated the progress of conversations. Warren Guidry testified that he had a conversation with Shawn Cryan of Travelers Centers regarding the email from John Underwood.[34] There are discrepancies in the information provided by John Underwood and the information provided by Shawn Cryan. These discrepancies create an issue of whether MCMG was aware of more information and failed to provide Food-N-Fun with a status update that delineated the progress of conversations with Travelers Centers as required by the Agreement.

MCMG further contends that any potential breach of the Agreement cannot be considered a substantial breach of the Agreement and summary judgment should be granted as a matter of law. However, the genuine issues of fact regarding whether MCMG's potential breaches are considered substantial breaches are questions of fact that should be decided by a jury. Because a substantial breach of the Agreement would excuse Food-N-Fun's non-performance, the Court finds that disposition of this

---

[34] Rec. Doc. 55-4, p. 30.

matter on summary judgment is not proper.

Moreover, the merits of MCMG's original action, Food-N-Fun's defense, and Food-N-Fun's counterclaim will rely on the same evidence. The Court cannot, as a practical matter, treat the suits as separate and sound judicial administration favors allowing the cases to proceed together. Therefore, MCMG's motion for summary judgment is denied.

## **CONCLUSION**

Because there are genuine issues of material fact whether MCMG substantially breached the Agreement, MCMG's motion for summary judgment [Rec. Doc. 42] is DENIED.

Signed at Lafayette, Louisiana on this 8th day of March 2018.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE